United States Bankruptcy Court

Eastern District of Pennsylvania

Notice of Electronic Claims Filing

The following transaction was received from NICHOLAS, BRIAN on 5/12/2023 at 11:48 AM EST

File another claim

| | |
|---|---|
| **Case Name:** | David Karl Brecht |
| **Case Number:** | 23-10659-pmm |
| **Creditor Name:** | CrossCountry Mortgage, LLC<br>1 Corporate Drive, Suite 360<br>Lake Zurich, IL 60047 |
| **Claim Number:** | 5    Claims Register |
| **Amount Claimed:** | $328,369.25 |
| **Amount Secured:** | $328369.25 |
| **Amount Priority:** | |

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Brecht 23-10659 POC1.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/12/2023] [FileNumber=31298877-
0] [03c602036a255b7b0b5adbf7a0effe0c0a632d896563645c4205f49b02df4a1417
8cef11ce9f09869b6c26f9331dae3e1d19a99cd0b027d41f203f9cb2ded012]]
**Document description:**Exhibit 410a
**Original filename:**C:\fakepath\Brecht 23-10659 POC 410a.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/12/2023] [FileNumber=31298877-
1] [3a0be5fae64dd1ea40fed918e392dfb5b7e6506962d6e19bf8cdcf7bba8931c513
8b70147740f761a5995f14bf2a2ea93a85f3f482d9f5f0b1b9ab4a442e8f18]]
**Document description:**Service List
**Original filename:**C:\fakepath\Brecht 23-10659 POC cos.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/12/2023] [FileNumber=31298877-
2] [adb2643e84672497dc9aa3ddf0b0664e9f1ffc5e77ec9d7a5b635c2515b22eb6f8
37042c3d33ebd6452db16a380720cfc94ec102b5a790b9f4ab49cce51c1247]]
**Document description:**Exhibit escrow
**Original filename:**C:\fakepath\Brecht 23-10659 POC ea.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/12/2023] [FileNumber=31298877-
3] [a7a589fa16aa36ea816e648e6310f441cf5b56a7f8fe852d6f12e7357093617a2f
bc209c7765ed1e4500ee6e02e97d14c0b82a3f827369edf747f5bd9ad3ad7c]]
**Document description:**Exhibit loan docs
**Original filename:**C:\fakepath\Brecht 23-10659 POC loan docs.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/12/2023] [FileNumber=31298877-
4] [2c5d9d9b074c946761820081d8ed4843bfb37eff737c4988870fb4330a0175f2b4
1efe214f693943b4a0dd0846a167edf7929884e0d52caae446d3ff57f60693]]

**23-10659-pmm Notice will be electronically mailed to:**

MICHAEL PATRICK FARRINGTON on behalf of Creditor CrossCountry Mortgage, LLC
mfarrington@kmllawgroup.com

BRENNA HOPE MENDELSOHN on behalf of Debtor David Karl Brecht
tobykmendelsohn@comcast.net

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

SCOTT F. WATERMAN [Chapter 13]
ECFMail@ReadingCh13.com

**23-10659-pmm Notice will not be electronically mailed to:**

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

**Fill in this information to identify the case:**

Debtor 1    David Karl Brecht
(Spouse, if filing)

United States Bankruptcy Court for  he EASTERN District of Pennsylvania

Case number   23-10659 PMM

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | **CrossCountry Mortgage, LLC** | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| 2. **Has this claim been acquired from someone else?** | ☒ No | |
| | ☐ Yes. From whom? _____ | |
| 3. **Where should notices and payments to the creditor be sent?** | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **CrossCountry Mortgage, LLC** Name | Name |
| | **1 Corporate Drive, Suite 360** Number       Street | Number       Street |
| | **Lake Zurich, IL 60047** City       State       Zip Code | City       State       Zip Code |
| | **800-669-0340** Contact phone | Contact phone |
| | Contact Email | Contact Email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____ | |
| 4. **Does this claim amend one already filed?** | ☒ No | |
| | ☐ Yes.  Claim number on court claims registry (if known)_____ | Filed on _____ MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No | |
| | ☐ Yes.  Who made the earlier filing? _____ | |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor    **2431**

---

**7. How much is this claim?** $\underline{328,369.25}$

Does this amount include interest or other charges?

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

---

**9. Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.
**Nature of property: 43 Five Points Rd Mertztown, PA 19539**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection:    **Recorded Mortgage**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____

Amount of the claim that is secured: $\underline{328,369.25}$

Amount of the claim that is unsecured: $_____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $\underline{1,129.96}$
Annual Interest Rate (when case was filed) **5.5630%**

☒ Fixed
☐ Variable

---

**10. Is this claim based on a lease?**

☒ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

---

**11. Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

Official Form 410    Proof of Claim    page 2

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ **No** | |
|---|---|---|
| | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    **05/12/2023**
                     MM / DD / YYYY

/s/ **Brian C. Nicholas Esq. Attorney ID#  317240**
            Signature

**Print the name of the person who is completing and signing this claim:**

| | | |
|---|---|---|
| Name | **Brian C. Nicholas**<br>First name | Middle name | Last name |
| Title | **Bankruptcy Attorney** | |
| Company | **KML Law Group, P.C.**<br>Identify the corporate servicer as the company if the authorized agent is a servicer. | |
| Address | **701 Market Street, Suite 5000**<br>Number         Street | |
| | **Philadelphia**<br>City | **PA**<br>State | **19106**<br>ZIP Code |
| Contact phone | **(215) 825-6488** | Email  **bnicholas@kmllawgroup.com** |

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-10659 PMM | Principal Balance | $332,020.49 | Principal & Interest | $0.00 | Principal & Interest | $1,915.36 |
| Debtor 1 | David Karl Brecht | Interest Due | $303.62 | Pre-petition Fees Due | $0.00 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $0.00 | Monthly Escrow | $564.98 |
| Last 4 Digits to Identify | 2431 | Fees / Costs Due | $0.00 | Projected Escrow Shortage | $1,129.96 | | |
| Creditor | CrossCountry Mortgage, LLC | Escrow Def for Funds Advanced | $0.00 | | | Mortgage Insurance | $0.00 |
| Servicer | CrossCountry Mortgage, LLC | Less Total Funds on Hand | $3,954.86 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $328,369.25 | Total Prepetition Arrears | $1,129.96 | Total Monthly Payment | $2,480.34 |

**CrossCountry Mortgage, LLC**
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945

**ANTICIPATED ESCROW ACCOUNT DISBURSEMENTS**

| | |
|---|---|
| CITY TAX | $1,014.60 |
| HAZARD INS | $1,200.00 |
| TAXES | $4,565.16 |
| Total | $6,779.76 |

**ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT
AND CHANGE OF PAYMENT NOTICE** PREPARED FOR

**ESCROW ANALYSIS DATE: 03/10/2023**

David Brecht
43 Five Points Rd

**NEW PAYMENT IS AS FOLLOWS:**

| | |
|---|---|
| Principal and Interest | $1,915.36 |
| Required Escrow Payment | $564.98 |
| Shortage/Surplus Spread | |
| Optional Coverages | |
| Buydown or Assistance Payments | |
| Other | |
| **Total Payment** | **$2,480.34** |
| **New Payment Effective Date:** | **04/01/2023** |

CrossCountry Mortgage, LLC has completed an analysis of your escrow account, and has adjusted your mortgage payment to reflect changes in your real estate taxes or property insurance. The escrow items to be disbursed from your account over the next twelve months are itemized above.

**ESCROW ACCOUNT PROJECTION FOR THE COMING YEAR**

The following estimate of activity in your escrow account from 04/2023 through 03/2024 is provided for your information. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance. The Required Escrow Account balance displays the amount actually required to be on hand as specified by Federal law, State law and your mortgage documents, and may include a cushion of up to 1/6th of your Annual Disbursements. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year.

| | PAYMENTS TO ESCROW ACCOUNT | PAYMENTS FROM ESCROW ACCOUNT | | | | ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|
| MONTH | | MIP/PMI | TAXES | FLOOD | HAZ. INS. | SPECIAL | PROJECTED | REQUIRED |
| STARTING BAL | | | | | | | $3,954.86 | $5,084.82 |
| APR | $564.98 | | $1,014.60 | | | | $3,505.24 | $4,635.20 |
| MAY | $564.98 | | | | | | $4,070.22 | $5,200.18 |
| JUN | $564.98 | | | | | | $4,635.20 | $5,765.16 |
| JUL | $564.98 | | | | $1,200.00 | | $4,000.18 | $5,130.14 |
| AUG | $564.98 | | $4,565.16 | | | | $0.00 | $1,129.96 * |
| SEP | $564.98 | | | | | | $564.98 | $1,694.94 |
| OCT | $564.98 | | | | | | $1,129.96 | $2,259.92 |
| NOV | $564.98 | | | | | | $1,694.94 | $2,824.90 |
| DEC | $564.98 | | | | | | $2,259.92 | $3,389.88 |
| JAN | $564.98 | | | | | | $2,824.90 | $3,954.86 |
| FEB | $564.98 | | | | | | $3,389.88 | $4,519.84 |
| MAR | $564.98 | | | | | | $3,954.86 | $5,084.82 |
| Total | | | $5,579.76 | | $1,200.00 | | | |

*Indicates your projected low point of $0.00.  Your required reserve balance is $1,129.96.  The difference between the projected low point and required reserve balance is $0.00.  Your escrow account does not have a shortage or overage at this time.

If you have questions regarding this analysis, please write our Customer Service Department at CrossCountry Mortgage, LLC, 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047-8945 or call toll free 1-877-538-8790, Monday through Friday, 8:00 am to 8:00 pm, CST.

THIS DOCUMENT IS AN ATTEMPT TO COLLECT
A DEBT, AND ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE. IF YOU
ARE IN BANKRUPTCY OR HAVE BEEN
DISCHARGED IN BANKRUPTCY, THIS LETTER IS
FOR INFORMATIONAL PURPOSES ONLY AND
DOES NOT CONSTITUTE A DEMAND FOR
PAYMENT IN VIOLATION OF THE AUTOMATIC
STAY OR THE DISCHARGE INJUNCTION OR AN
ATTEMPT TO RECOVER ALL OR ANY PORTION
OF THE DEBT FROM YOU PERSONALLY.

**ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT ACCOUNT**

**Name: David Brecht**

This is a statement of actual activity in your escrow account from 12/2022 through 03/2023.  Last year's projections are next to the actual activity.  Your mortgage payment for the past year was $2,480.34 of which $1,915.36 was for principal and interest and $564.98 went into your escrow account.  An asterisk(*) indicates a difference from a previous estimate either in the date or the amount.  A 'Y' indicates a projected disbursement or payment.

| MONTH | PAYMENTS TO ESC. ACCT. PROJECTED | ACTUAL | PAYMENTS FROM ESC. ACCT. PROJECTED | ACTUAL | DESCRIPTION | ESCROW BAL. PROJECTED | COMPARISON ACTUAL |
|---|---|---|---|---|---|---|---|
| STARTING BAL | | | | | | $1,694.94 | $1,694.94 |
| DEC | $564.98 | $564.98 | | | | $2,259.92 | $2,259.92 |
| JAN | $564.98 | $564.98 | | | | $2,824.90 | $2,824.90 |
| FEB | $564.98 | $564.98 | | | | $3,389.88 | $3,389.88 |
| MAR | $564.98 | $564.98 | | | | $3,954.86 | $3,954.86 |
| APR | $564.98 | * | $1,014.60 | * | CITY TAX | $3,505.24 | $0.00 |
| MAY | $564.98 | * | | | | $4,070.22 | $0.00 |
| JUN | $564.98 | * | | | | $4,635.20 | $0.00 |
| JUL | $564.98 | * | $1,200.00 | * | HOME INS | $4,000.18 | $0.00 |
| AUG | $564.98 | * | $4,565.16 | * | SCHOOL TAX | $0.00 | $0.00 |
| SEP | $564.98 | * | | | | $564.98 | $0.00 |
| OCT | $564.98 | * | | | | $1,129.96 | $0.00 |
| NOV | $564.98 | * | | | | $1,694.94 | $0.00 |
| Total | $6,779.76 | $2,259.92 | $6,779.76 | $0.00 | | | |

OVER THIS PERIOD, AN ADDITIONAL $0.00 WAS DEPOSITED INTO YOUR ESCROW ACCOUNT FOR INTEREST ON ESCROW.

Last year, we anticipated that payments from your escrow account would be made during this period equaling $6,779.76.  Under Federal Law, your lowest balance should not have exceeded $1,129.96 or 1/6TH of anticipated payments from the account, unless your mortgage contract or state law specified a lower amount.  Under your mortgage contract and/or state law, your lowest balance should not have exceeded $0.00.

Your actual lowest monthly balance was greater than $0.00.  The items with an asterisk on your account history may explain this.  If you would like a further explanation, please call our toll-free number: 1-877-538-8790.

## NOTE

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

July 21, 2022                         Brecksville,                         Ohio
[Date]                                   [City]                           [State]

43 Five Points Rd, Mertztown, PA 19539
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$335,000.00**    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **CrossCountry Mortgage, LLC, a Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.563 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

### 3.  PAYMENTS

####  (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**    day of each month beginning on **September 1, 2022.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August 1, 2052,**    I still owe amounts under this Note, I will  pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at  6850 Miller Road
Brecksville, OH 44141

or at a different place if required by the Note Holder.

####  (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$1,915.36.**

### 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The late charge may not be more than **4.000** % of any installment. Installment is defined as the total of principal, interest, taxes, and insurance. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

7. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11. **EFFECT OF SURVIVAL EVENTS**

For purposes of this Note, "Survival Event" is defined as follows:

(a) Any default described in Section 6(B) of this Note;

(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d) The Maturity Date as defined in this Note;

(e) The entry of any judgment against me under this Note; and

(f) The entry of any judgment under the Security Instrument.

**12. ALLONGE TO THIS NOTE**

If an allonge providing for payment adjustments or for any other supplemental information is executed by me together with this Note, the covenants of the allonge are incorporated into and amends and supplements the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge          ☐ Other [Specify]

**13. V.A. REGULATIONS**

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)

DAVID BRECHT

Lender    Cross Country Mortgage, LLC
NMLS
Loan        Jeffrey Allen Giglio
NMLS

[Sign Original Only]

PENNSYLVANIA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3239 1/01 MODIFIED
ICE Mortgage Technology, Inc.                        Page 3 of 3

V3200PAN   0422
V3200PAN (CLS)
07/21/2022 08:42 AM PST



When recorded, return to:
**First American Mortgage Solutions**
**Mail Stop: 142-C**
**C/O CrossCountry Mortgage, LLC**
**1795 International Way**
**Idaho Falls, ID 83402**

This document was prepared by:
**Jaime Parish**
**CrossCountry Mortgage, LLC**
**6850 Miller Road**
**Brecksville, OH 44141**

██████████████

████████████████████

**43 Five Points Rd, Mertztown, PA 19539**

████████████████████████████████

———————————— [Space Above This Line For Recording Data] ————————————

## MORTGAGE

████████████████

████████████████

DEFINITIONS
Words used in multiple sections of this document are defined below and other words
are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of
words used in this document are also provided in Section 16.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 1 of 23                    PAEDEDL   0721
                                                                                PAEDEDL (CLS)
                                                                      07/21/2022 08:42 AM PST

(A) "Security Instrument" means this document, which is dated **July 21, 2022,**
together with all Riders to this document.
(B) "Borrower" is    **DAVID BRECHT.**

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate
corporation that is acting solely as a nominee for Lender and Lender's successors and
assigns. **MERS is the mortgagee under this Security Instrument.** MERS is orga-
nized and existing under the laws of Delaware, and has a mailing address of P.O. Box
2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C,
Danville, IL 61834. The MERS telephone number is (888) 679-MERS.
(D) "Lender" is    **CrossCountry Mortgage, LLC.**

Lender is  **a Limited Liability Company,**              organized and existing under the
laws of  **Delaware.**                                           Lender's address is
**6850 Miller Road, Brecksville, OH 44141.**

(E) "Note" means the promissory note signed by Borrower and dated
**July 21, 2022.**              The Note states that Borrower owes Lender  **THREE
HUNDRED THIRTY FIVE THOUSAND AND NO/100**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* Dollars (U.S.  **$335,000.00**         )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and
to pay the debt in full not later than  **August 1, 2052.**
(F) "Property" means the property that is described below under the heading "Transfer
of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment
charges and late charges due under the Note, and all sums due under this Security
Instrument, plus interest.

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 2 of 23                    PAEDEDL  0721
                                                                                PAEDEDL (CLS)
                                                                    07/21/2022 08:42 AM PST

**(H) "Riders"** means all Riders to this Security Instrument █████████
The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ Biweekly Payment Rider ☒ V.A. Rider
☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renew-als, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this pur-pose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the
**County**                                                    [Type of Recording Jurisdiction]
of **Berks**
    [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**

which currently has the address of  **43 Five Points Rd, Mertztown,**

Pennsylvania  **19539**          ("Property Address"):          [Street] [City]
        [Zip Code]

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                    Page 4 of 23                    PAEDEDL   0721
                                                                                PAEDEDL (CLS)
                                                            07/21/2022 08:42 AM PST

TOGETHER WITH all the improvements now or here███████ ███████ ██ ███ ████████, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance

with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items

which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest

on the Funds and Applicable Law permits Lender to mak▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
agreement is made in writing or Applicable Law requires interest to be paid on the
Funds, Lender shall not be required to pay Borrower any interest or earnings on the
Funds. Borrower and Lender can agree in writing, however, that interest shall be paid
on the Funds. Lender shall give to Borrower, without charge, an annual accounting of
the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall
account to Borrower for the excess funds in accordance with RESPA. If there is a short-
age of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as
required by RESPA, and Borrower shall pay to Lender the amount necessary to make
up the shortage in accordance with RESPA, but in no more than 12 monthly payments.
If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall
notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount
necessary to make up the deficiency in accordance with RESPA, but in no more than
12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall
promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines,
and impositions attributable to the Property which can attain priority over this Security
Instrument, leasehold payments or ground rents on the Property, if any, and Community
Association Dues, Fees, and Assessments, if any. To the extent that these items are
Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security
Instrument unless Borrower: (a) agrees in writing to the payment of the obligation
secured by the lien in a manner acceptable to Lender, but only so long as Borrower is
performing such agreement; (b) contests the lien in good faith by, or defends against
enforcement of the lien in, legal proceedings which in Lender's opinion operate to pre-
vent the enforcement of the lien while those proceedings are pending, but only until
such proceedings are concluded; or (c) secures from the holder of the lien an agree-
ment satisfactory to Lender subordinating the lien to this Security Instrument. If Lender
determines that any part of the Property is subject to a lien which can attain priority
over this Security Instrument, Lender may give Borrower a notice identifying the lien.
Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien
or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verifica-
tion and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
hereafter erected on the Property insured against loss by fire, hazards included within
the term "extended coverage," and any other hazards including, but not limited to,
earthquakes and floods, for which Lender requires insurance. This insurance shall be
maintained in the amounts (including deductible levels) and for the periods that Lender
requires. What Lender requires pursuant to the preceding sentences can change during
the term of the Loan. The insurance carrier providing the insurance shall be chosen by
Borrower subject to Lender's right to disapprove Borrower's choice, which right shall
not be exercised unreasonably. Lender may require Borrower to pay, in connection with
this Loan, either: (a) a one-time charge for flood zone determination, certification and
tracking services; or (b) a one-time charge for flood zone determination and certifica-
tion services and subsequent charges each time remappings or similar changes occur
which reasonably might affect such determination or certification. Borrower shall also be
responsible for the payment of any fees imposed by the Federal Emergency Manage-
ment Agency in connection with the review of any flood zone determination resulting
from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may
obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under
no obligation to purchase any particular type or amount of coverage. Therefore, such
coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity
in the Property, or the contents of the Property, against any risk, hazard or liability and
might provide greater or lesser coverage than was previously in effect. Borrower acknowl-
edges that the cost of the insurance coverage so obtained might significantly exceed
the cost of insurance that Borrower could have obtained. Any amounts disbursed by
Lender under this Section 5 shall become additional debt of Borrower secured by this
Security Instrument. These amounts shall bear interest at the Note rate from the date
of disbursement and shall be payable, with such interest, upon notice from Lender to
Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be
subject to Lender's right to disapprove such policies, shall include a standard mortgage
clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender
shall have the right to hold the policies and renewal certificates. If Lender requires, Bor-
rower shall promptly give to Lender all receipts of paid premiums and renewal notices.
If Borrower obtains any form of insurance coverage, not otherwise required by Lender,
for damage to, or destruction of, the Property, such policy shall include a standard mort-
gage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this

Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer

selected by Lender again becomes available, is obtained, and Lender requires separately
designated payments toward the premiums for Mortgage Insurance. If Lender required
Mortgage Insurance as a condition of making the Loan and Borrower was required to
make separately designated payments toward the premiums for Mortgage Insurance,
Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to
provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance
ends in accordance with any written agreement between Borrower and Lender provid-
ing for such termination or until termination is required by Applicable Law. Nothing in this
Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for
certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is
not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to
time, and may enter into agreements with other parties that share or modify their risk,
or reduce losses. These agreements are on terms and conditions that are satisfactory
to the mortgage insurer and the other party (or parties) to these agreements. These
agreements may require the mortgage insurer to make payments using any source of
funds that the mortgage insurer may have available (which may include funds obtained
from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer,
any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly
or indirectly) amounts that derive from (or might be characterized as) a portion of Bor-
rower's payments for Mortgage Insurance, in exchange for sharing or modifying the
mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate
of Lender takes a share of the insurer's risk in exchange for a share of the premiums
paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed
to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements
will not increase the amount Borrower will owe for Mortgage Insurance, and they
will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with
respect to the Mortgage Insurance under the Homeowners Protection Act of 1998
or any other law. These rights may include the right to receive certain disclosures,
to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage
Insurance terminated automatically, and/or to receive a refund of any Mortgage Insur-
ance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfe** 
ceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to

settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to

extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only

report a change of address through that specified proce████████████████████████
designated notice address under this Security Instrument at any one time. Any notice
to Lender shall be given by delivering it or by mailing it by first class mail to Lender's
address stated herein unless Lender has designated another address by notice to
Borrower. Any notice in connection with this Security Instrument shall not be deemed
to have been given to Lender until actually received by Lender. If any notice required
by this Security Instrument is also required under Applicable Law, the Applicable Law
requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument
shall be governed by federal law and the law of the jurisdiction in which the Property
is located. All rights and obligations contained in this Security Instrument are subject
to any requirements and limitations of Applicable Law. Applicable Law might explicitly
or implicitly allow the parties to agree by contract or it might be silent, but such silence
shall not be construed as a prohibition against agreement by contract. In the event that
any provision or clause of this Security Instrument or the Note conflicts with Applicable
Law, such conflict shall not affect other provisions of this Security Instrument or the
Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean
and include corresponding neuter words or words of the feminine gender; (b) words in
the singular shall mean and include the plural and vice versa; and (c) the word "may"
gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this
Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in
this Section 18, "Interest in the Property" means any legal or beneficial interest in the
Property, including, but not limited to, those beneficial interests transferred in a bond
for deed, contract for deed, installment sales contract or escrow agreement, the intent
of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred
(or if Borrower is not a natural person and a beneficial interest in Borrower is sold or
transferred) without Lender's prior written consent, Lender may require immediate pay-
ment in full of all sums secured by this Security Instrument. However, this option shall
not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.
The notice shall provide a period of not less than 30 days from the date the notice is
given in accordance with Section 15 within which Borrower must pay all sums secured

by this Security Instrument. If Borrower fails to pay th█████████████████████████████ of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with

a notice of transfer of servicing. If the Note is sold and ~~thereafter the Loan is serviced~~ by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to

be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower

shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:
  (a) any default described in the Note;
  (b) Lender requiring Borrower to pay immediately the full amount of Principal which
      has not been paid and all the interest that Borrower owes on that amount under
      the Note;
  (c) Lender requiring immediate payment in full of all sums secured by this Security
      Instrument as described in the Note and Sections 18 and 22 of this Security
      Instrument;
  (d) the Maturity Date as defined in the Note;
  (e) the entry of any judgment against Borrower under the Note; and
  (f) the entry of any judgment under this Security Instrument.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants
contained in this Security Instrument and in any Rider executed by Borrower and
recorded with it.

_____   7/21/200_ (Seal)
**DAVID BRECHT**                                              DATE

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                Page 22 of 23                PAEDEDL   0721
                                                                          PAEDEDL (CLS)
                                                                          07/21/2022 08:42 AM PST

State of PENNSYLVANIA
County of BERKS

This record was acknowledged before me on this, the __21__ day of __July 2022__
_____, by DAVID BRECHT.

Signature of Notarial Officer
(STAMP)

Commonwealth of Pennsylvania - Notary Seal
Carol A. Chelius, Notary Public
Berks County
My commission expires October 10, 2022
Commission number 1193413
Member, Pennsylvania Association of Notaries

Title of Officer ___Settlement officer___

My commission expires ___10.10.2022___

Lender: CrossCountry Mortgage, LLC
NMLS I██████
Loan O██████ ffrey Alien Giglio
NMLS I██████

Certificate of Residence
I, ___Carol A Chelius___, do hereby certify
that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this _____ __21__ day of ___July 2022___

Agent of Mortgagee

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
ICE Mortgage Technology, Inc.                  Page 23 of 23                         PAEDEDL   0721
                                                                                    PAEDEDL (CLS)
                                                                          07/21/2022 08:42 AM PST



**State of PENNSYLVANIA**
**County of BERKS**

This record was acknowledged before me on this, the ___21___ day of _July 2022_
_____, by DAVID BRECHT.

_(signature)_
**Signature of Notarial Officer**
**(STAMP)**

Commonwealth of Pennsylvania - Notary Seal
Carol A. Chelius, Notary Public
Berks County
My commission expires October 10, 2022
Commission number 1193413
Member, Pennsylvania Association of Notaries

Title of Officer _Settlement officer_

My commission expires _10 . 10 . 2022_

Lender: CrossCountry Mortgage, LLC
NMLS I
Loan O            ffrey Alien Giglio
NMLS I

Certificate of Residence
I, _Carol A Chelius_ , do hereby certify
that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this ___21___ day of _July 2022_

_(signature)_
Agent of Mortgagee

# EXHIBIT A

ALL THAT CERTAIN lot or tract of land located on the North side of Township Road T-755, known as "Five Points Road" leading from Pennsylvania State Highway Legislative Route No. 06192, known as "Schweitz Road" to Henningsville as shown on plan of survey No. GHI-D-6028 by Gibbons and Hatt, Inc., Reading, Pennsylvania and situate in the Township of Rockland, County of Berks and Commonwealth of Pennsylvania, and being more fully bounded and described as follows, to wit:

BEGINNING at a PK spike and disc near the South edge of macadam paving on Township Road No. T-755, known as "Five Points Road" leading from Pennsylvania State Highway Legislative Route No. 06192, known as "Schweitz Road" to Henningsville, a corner in common with properties belonging to R. B. Hunter and Richard B. Strozyk; thence extending in a Northwesterly direction leaving said Five Points Road along property belonging to R. B. Hunter on a line bearing North 69 degrees 07 minutes West passing through a steel pipe on line at a distance of 46.78 feet from the first described corner and passing through a 24 inch cherry tree on line at a distance of 102.07 feet from the first described corner a total distance of 235.13 feet to a steel pipe a corner of residue property belonging to John Y. Back and Jean M. Beck, his wife; thence extending along residue property belonging to John Y. Beck and Jean M. Beck, his wife, the following five courses and distances, to wit: (1) in a Northeasterly direction partially along the center line of an earth and gravel private road on a line bearing North 4 degrees 35 minutes 39 seconds East passing through a steel pipe on line at a distance of 49.20 feet from the last described corner a total distance of 338.96 feet to a steel pipe; (2) is a Northwesterly direction along the center line of said private road on a line bearing North 3 degrees 24 minutes 05 (erroneously stated as 35 in prior deed) seconds West a distance of 238.87 feet to a railroad spike; (3) in a Northeasterly direction along the center line of said private road on a line bearing North 6 degrees 48 minutes 01 second East a distance of 92.11 feet to a steel pipe; (4) in a Northwesterly direction along said private road on a line bearing North 00 degrees 49 minutes 36 seconds West a distance of 238.41 feet a steel pipe; (5) in a Northeasterly direction along the center line of said private drive on a line bearing North 6 degrees 57 minutes 01 second East a distance of 92.74 feet to a steel pipe in line of property belonging to James J. Kelly and Beverly A. Kelly, his wife; thence extending in a southeasterly direction along property belonging is James J. Kelly and Beverly A. Kelly, his wife, on a line bearing South 75 degrees 23 minutes 20 seconds East a distance of 593.38 feet to a 12 inch oak tree a corner in line of property belonging to Marvin L. Fegley; thence extending in a Southwesterly direction partially along property belonging to Marvin L. Fegley and partially along property belonging to Richard B. Strozyk on a line bearing South 22 degrees 16 minutes 30 seconds West passing through a steel pipe on line a distance of 974.51 feet from the last described corner a total distance of 1,018.36 feet to the place of beginning.

BEING the same premises which Thomas C. Roginski and Donna S. Roginski, husband and wife, by Deed dated 03/10/2021 and recorded 03/22/2021 in the Office of the Recorder of Deeds in and for the County of Berks in Instrument No. 2021013485, granted and conveyed unto Swift Property Solutions LLC, a Pennsylvania Limited Liability Company.

**THE ACTUAL CONSIDERATION IS: $335,000.00**

 

**INSTRUMENT # 2022032195**

RECORDED DATE: 08/09/2022 12:13:55 PM

**Mary Kozak**
**Berks County Recorder of Deeds**

Berks County Services Center 3rd Floor
633 Court Street
Reading, PA 19601
Office: (610) 478-3380 – Fax: (610) 478-3368
Website: www.countyofberks.com/recorder

| Document Type: MORTGAGE | Transaction #: | 5882271 |
|---|---|---|
| | Document Page Count: | 27 |
| | Operator Id: | dfuoco |

**PARCEL ID(s): (See doc for additional parcel #'s)**
75546104606213

**SUBMITTED BY:**
Stewart Abstract
1130 BERKSHIRE BLVD STE 100

READING, PA 19610-1221
(610) 372-8201

**\* PROPERTY DATA:**

\*\* PLEASE SEE DOCUMENT OR INDEX FOR PROPERTY DATA

**FEES / TAXES:**

| RECORDING FEES: MORTGAGE | $14.75 |
|---|---|
| AFFORDABLE HOUSING FEE | $11.50 |
| RECORDS IMPROVEMENT FUND | $5.00 |
| JUDICIAL FEE | $40.25 |
| WRIT TAX | $0.50 |
| PARCEL ID FEE | $10.00 |
| ADDITIONAL PAGE FEE | $46.00 |
| ADDITIONAL PAGE FEE (AFF) | $46.00 |
| **Total:** | **$174.00** |

**INSTRUMENT #: 2022032195**
Recorded Date: 08/09/2022 12:13:55 PM

I hereby CERTIFY that this document is recorded
in the Recorder of Deeds Office in Berks County,
Pennsylvania.

 

**Mary Kozak**
**Recorder of Deeds**

## OFFICIAL RECORDING COVER PAGE

Page 1 of 28

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

 

**INSTRUMENT # 2023009813**

RECORDED DATE: 04/06/2023 09:55:57 AM



Mary Kozak
Berks County Recorder of Deeds

Berks County Services Center 3rd Floor
633 Court Street
Reading, PA 19601
Office: (610) 478-3380 ~ Fax: (610) 478-3359
Website: www.countyofberks.com/recorder

| **Document Type:**   ASSIGNMENT OF MORTGAGE | **Transaction #:** | 5948281 |
|---|---|---|
| | **Document Page Count:** | 2 |
| | **Operator Id:** | sdweidner |

| **PARCEL ID(s): (See doc for additional parcel #'s)**<br>75546104606213 | **SUBMITTED BY:**<br>KML Law Group, P.C.<br>701 MARKET ST STE 5000<br><br>PHILADELPHIA, PA 19106-1541<br>(215) 825-6315 |
|---|---|

**\* PROPERTY DATA:**

**\*\* PLEASE SEE DOCUMENT OR INDEX FOR PROPERTY DATA**

| **FEES / TAXES:** | | |
|---|---|---|
| RECORDING FEES: ASSIGNMENT OF | | |
| MORTGAGE | $26.25 | |
| RECORDS IMPROVEMENT FUND | $5.00 | |
| JUDICIAL FEE | $40.25 | |
| WRIT TAX | $0.50 | |
| PARCEL ID FEE | $10.00 | |
| **Total:** | $82.00 | |

**INSTRUMENT #: 2023009813**
Recorded Date: 04/06/2023 09:55:57 AM

I hereby CERTIFY that this document is recorded
in the Recorder of Deeds Office in Berks County,
Pennsylvania.



**Mary Kozak
Recorder of Deeds**

## OFFICIAL RECORDING COVER PAGE

Page 1 of 3

# PLEASE DO NOT DETACH
### THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Prepared By and Return To: Client Services
KML LAW GROUP, P.C.
BNY Independence Center - Suite 5000
701 Market Street
Philadelphia, PA 19106-1532



11819 Miami St., Suite 100, Omaha, NE 68164, P. O. Box 2026, Flint MI 48501-2026

## ASSIGNMENT OF MORTGAGE

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR CROSSCOUNTRY MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS** (Assignor), for good and valuable consideration, the receipt of which is acknowledged, does grant, assign and transfer to **CROSSCOUNTRY MORTGAGE, LLC** (Assignee), all of its right, title and interest, as holder of, in, and to the following described mortgage and property:

Executed **DAVID BRECHT**, Mortgagor(s); to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR CROSSCOUNTRY MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS**. Bearing date of: **July 21, 2022**; Amount Secured: **$335,000.00**; Recorded on **August 9, 2022**; in **Instrument # 2022032195**; in the Recorder of Deeds Office of **Berks** County, Commonwealth of Pennsylvania ("Mortgage")

Property: **43 Five Points Rd, Mertztown, Pennsylvania 19539**

AS FURTHER DESCRIBED IN EXHIBIT "A", ATTACHED AND INCORPORATED INTO THIS ASSIGNMENT.
Described in the Mortgage endorsed to the Assignee and all moneys due and to become due on the Mortgage, with interest. Assignee its successors, legal representatives and assigns shall hold all rights under the Mortgage forever, subject however, to the right and equity of redemption, if any, of the maker(s) of the Mortgage, their heirs and assigns forever.

Assignor, by its appropriate corporate officer, has executed this Assignment of Mortgage on this **31** day of **March**, 20**23**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR CROSSCOUNTRY MORTGAGE, LEC, ITS SUCCESSORS AND ASSIGNS

Name: Jodi Reisch
Title: Assistant Secretary
Date:

I hereby certify the address of the Assignee is:
6850 Miller Road
Brecksville, OH 44141

Signature:
Print Name  Jodi Reisch
Title:  Assistant Secretary
ss:                                    **Lake**
STATE OF  **Illinois**  ) COUNTY OF
BE IT REMEMBERED, that on this **31** day of **March**, 20**23**, before me, the subscriber, a Notary Public personally appeared
Name:  Jodi Reisch
Title:  Assistant Secretary
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR CROSSCOUNTRY MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS

officer of Assignor, who I am satisfied is the person who signed the within instrument and they acknowledged that they signed and delivered the same as such officer aforesaid, and that the within instrument is the voluntary act and deed of such corporation made by virtue of a Resolution of its Board of Directors.

Notary Public
My commission expires: **Jun 16, 2023**

Page 1 of 2

OFFICIAL SEAL
RENEE M KROPP
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/16/23

# EXHIBIT A

ALL THAT CERTAIN lot or tract of land located on the North side of Township Road T-755, known as "Five Points Road" leading from Pennsylvania State Highway Legislative Route No. 06192, known as "Schweitz Road" to Henningsville as shown on plan of survey No. GHI-D-6028 by Gibbons and Hatt, Inc., Reading, Pennsylvania and situate in the Township of Rockland, County of Berks and Commonwealth of Pennsylvania, and being more fully bounded and described as follows, to wit:

BEGINNING at a PK spike and disc near the South edge of macadam paving on Township Road No. T-755, known as "Five Points Road" leading from Pennsylvania State Highway Legislative Route No. 06192, known as "Schweitz Road" to Henningsville, a corner in common with properties belonging to R. B. Hunter and Richard B. Strozyk; thence extending in a Northwesterly direction leaving said Five Points Road along property belonging to R. B. Hunter on a line bearing North 69 degrees 07 minutes West passing through a steel pipe on line at a distance of 46.78 feet from the first described corner and passing through a 24 inch cherry tree on line at a distance of 102.07 feet from the first described corner a total distance of 235.13 feet to a steel pipe a corner of residue property belonging to John Y. Back and Jean M. Beck, his wife; thence extending along residue property belonging to John Y. Beck and Jean M. Beck, his wife, the following five courses and distances, to wit: (1) in a Northeasterly direction partially along the center line of an earth and gravel private road on a line bearing North 4 degrees 35 minutes 39 seconds East passing through a steel pipe on line at a distance of 49.20 feet from the last described corner a total distance of 338.96 feet to a steel pipe; (2) is a Northwesterly direction along the center line of said private road on a line bearing North 3 degrees 24 minutes 05 (erroneously stated as 35 in prior deed) seconds West a distance of 238.87 feet to a railroad spike; (3) in a Northeasterly direction along the center line of said private road on a line bearing North 6 degrees 48 minutes 01 second East a distance of 92.11 feet to a steel pipe; (4) in a Northwesterly direction along said private road on a line bearing North 00 degrees 49 minutes 36 seconds West a distance of 238.41 feet a steel pipe; (5) in a Northeasterly direction along the center line of said private drive on a line bearing North 6 degrees 57 minutes 01 second East a distance of 92.74 feet to a steel pipe in line of property belonging to James J. Kelly and Beverly A. Kelly, his wife; thence extending in a southeasterly direction along property belonging is James J. Kelly and Beverly A. Kelly, his wife, on a line bearing South 75 degrees 23 minutes 20 seconds East a distance of 593.38 feet to a 12 inch oak tree a corner in line of property belonging to Marvin L. Fegley; thence extending in a Southwesterly direction partially along property belonging to Marvin L. Fegley and partially along property belonging to Richard B. Strozyk on a line bearing South 22 degrees 16 minutes 30 seconds West passing through a steel pipe on line a distance of 974.51 feet from the last described corner a total distance of 1,018.36 feet to the place of beginning.

BEING the same premises which Thomas C. Roginski and Donna S. Roginski, husband and wife, by Deed dated 03/10/2021 and recorded 03/22/2021 in the Office of the Recorder of Deeds in and for the County of Berks in Instrument No. 2021013485, granted and conveyed unto Swift Property Solutions LLC, a Pennsylvania Limited Liability Company.

## THE ACTUAL CONSIDERATION IS: $335,000.00

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| David Karl Brecht | CHAPTER 13 |
| Debtor(s) | NO. 23-10659 PMM |

CERTIFICATE OF SERVICE

I, the undersigned, attorney for CrossCountry Mortgage, LLC do hereby certify that true and correct copies of the foregoing Proof of Claim have been served <u>May 12, 2023</u>, by electronic filing upon those listed below:

<u>Attorney for Debtor(s)</u>
Mendelsohn, Brenna Hope
Mendelsohn & Mendelsohn, PC
637 Walnut Street
Reading, PA 19601

***Bankruptcy Trustee***
Scott F. Waterman
2901 St. Lawrence Ave.
Suite 100
Reading, PA 19606

Date: <u>May 12, 2023</u>

<u>**/s/Brian C. Nicholas Esq.**</u>
Brian C. Nicholas Esq.
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
(215) 825-6488
bnicholas@kmllawgroup.com